Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KARLA KELLER,<br><br>　　Plaintiff,<br><br>　　v.<br><br>FLIR SYSTEMS, INC., EARL R. LEWIS, JAMES J. CANNON, JOHN D. CARTER, WILLIAM W. CROUCH, CATHERINE A. HALLIGAN, ANGUS L. MACDONALD, MICHAEL T. SMITH, CATHY STAUFFER, ROBERT S. TYRER, JOHN W. WOOD, JR., and STEVEN E. WYNNE,<br><br>　　Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Karla Keller ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.　This is an action against FLIR Systems, Inc. ("FLIR" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of FLIR by Teledyne Technologies Incorporated ("Teledyne") and its wholly-owned subsidiaries, Firework Merger Sub I, Inc. ("Merger Sub I") and Firework Merger Sub II, LLC ("Merger Sub II").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of FLIR common stock.

7. Defendant FLIR, together with its subsidiaries, designs, develops, markets, and distributes thermal imaging systems, visible-light imaging systems, locater systems, measurement

2

and diagnostic systems, and threat-detection solutions worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq under the ticker symbol, "FLIR."

8. Defendant Earl R. Lewis ("Lewis") is Chairman of the Board of the Company.

9. Defendant James J. Cannon ("Cannon") is President, Chief Executive Officer ("CEO"), and a director of the Company.

10. Defendant John D. Carter ("Carter") is a director of the Company.

11. Defendant William W. Crouch ("Crouch") is a director of the Company.

12. Defendant Catherine A. Halligan ("Halligan") is a director of the Company.

13. Defendant Angus L. Macdonald ("Macdonald") is a director of the Company.

14. Defendant Michael T. Smith ("Smith") is a director of the Company.

15. Defendant Cathy Stauffer ("Stauffer") is a director of the Company.

16. Defendant Robert S. Tyrer ("Tyrer") is a director of the Company.

17. Defendant John W. Wood, Jr. ("Wood") is a director of the Company.

18. Defendant Steven E. Wynne ("Wynne") is a director of the Company.

19. Defendants Lewis, Cannon, Carter, Crouch, Halligan, Macdonald, Smith, Stauffer, Tyrer, Wood, and Wynne are collectively referred to herein as the "Individual Defendants."

20. Defendants FLIR and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

21. On January 4, 2021, FLIR and Teledyne announced that they had entered into a definitive agreement under which Teledyne would acquire FLIR in a cash and stock transaction.

Under the terms of the agreement, FLIR shareholders would receive $28.00 per share in cash and 0.0718 shares of Teledyne common stock for each FLIR share. The press release announcing the Proposed Transaction states, in pertinent part:

### Teledyne to Acquire FLIR Systems

*Cash and Stock Transaction Valued at Approximately $8.0 Billion*

*Teledyne and FLIR to Host Joint Conference Call and Webcast at 11:00 a.m. Eastern Today*

January 04, 2021 06:45 AM Eastern Standard Time

THOUSAND OAKS, Calif. & ARLINGTON, Va.--(BUSINESS WIRE)-- Teledyne Technologies Incorporated (NYSE:TDY) ("Teledyne") and FLIR Systems, Inc. (NASDAQ:FLIR) ("FLIR") jointly announced today that they have entered into a definitive agreement under which Teledyne will acquire FLIR in a cash and stock transaction valued at approximately $8.0 billion.

Under the terms of the agreement, FLIR stockholders will receive $28.00 per share in cash and 0.0718 shares of Teledyne common stock for each FLIR share, which implies a total purchase price of $56.00 per FLIR share based on Teledyne's 5-day volume weighted average price as of December 31, 2020. The transaction reflects a 40% premium for FLIR stockholders based on FLIR's 30-day volume weighted average price as of December 31, 2020.

As part of the transaction, Teledyne has arranged a $4.5 billion 364-day credit commitment to fund the transaction and refinance certain existing debt. Teledyne expects to fund the transaction with permanent financing prior to closing. Net leverage at closing is expected to be approximately 4.0x adjusted pro forma EBITDA with leverage declining to less than 3.0x by the end of 2022.

Teledyne expects the acquisition to be immediately accretive to earnings, excluding transaction costs and intangible asset amortization, and accretive to GAAP earnings in the first full calendar year following the acquisition.

*   *   *

**Approvals and Timing**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in the middle of 2021 subject to the receipt of required regulatory approvals, including expiration or termination of the applicable

waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, approvals of Teledyne and FLIR stockholders and other customary closing conditions.

**Advisors**

Evercore is acting as exclusive financial advisor and McGuireWoods LLP is acting as legal advisor to Teledyne in connection with the transaction. Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Hogan Lovells US LLP is acting as legal advisor to FLIR in connection with the transaction. Teledyne has entered into a 364-day senior unsecured bridge facility credit agreement with Bank of America as sole lead arranger and administrative agent.

\*   \*   \*

**About Teledyne**

Teledyne is a leading provider of sophisticated instrumentation, digital imaging products and software, aerospace and defense electronics, and engineered systems. Teledyne's operations are primarily located in the United States, Canada, the United Kingdom, and Western and Northern Europe. For more information, please visit www.teledyne.com.

**About FLIR**

Founded in 1978, FLIR is a world-leading industrial technology company focused on intelligent sensing solutions for defense and industrial applications. FLIR's vision is to be "The World's Sixth Sense," creating technologies to help professionals make more informed decisions that save lives and livelihoods. For more information, please visit www.flir.com

22.     On March 4, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

23.     The Registration Statement, which recommends that FLIR shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) FLIR's and Teledyne's financial projections; (ii) the financial analyses performed by FLIR's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in connection with its fairness

5

opinion; (iii) the sales process leading up to the Proposed Transaction; and (iv) potential conflicts of interest involving Goldman Sachs.

24. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Mergers; (ii) FLIR's Reasons for the Mergers; Recommendation of the FLIR Board of Directors; (iii) Opinion of FLIR's Financial Advisor; (iv) Unaudited Prospective Financial Information Used by the FLIR Board of Directors and FLIR's Financial Advisor; and (v) Unaudited Prospective Financial Information Used by the Teledyne Board of Directors and Teledyne's Financial Advisor.

25. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, FLIR shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

    **1. Material Omissions Concerning FLIR's and Teledyne's Financial Projections**

26. The Registration Statement omits material information concerning FLIR's and Teledyne's financial projections.

27. With respect to the "FLIR Projections," the Registration Statement fails to disclose the following: (1) all line items underlying (i) Revenue, (ii) Net Income, (iii) Adjusted EBITDA, (iv) Unlevered Free Cash Flow, and (v) Adjusted EPS; and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

28. With respect to the "Teledyne Projections," the Registration Statement fails to disclose the following: (1) all line items underlying (i) Revenue, (ii) Net Income, (iii) Adjusted EBITDA, and (iv) Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP financial

6

metrics.

29. With respect to the "Teledyne Pro Forma Projections," the Registration Statement fails to disclose the following: (1) all line items underlying (i) Revenue, (ii) Adjusted EBITDA, (iii) Unlevered Free Cash Flow, and (iv) Adjusted EPS; (2) the combined company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP financial metrics.

30. When a company discloses non-GAAP financial metrics in a Registration Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

31. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 23, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

32. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

33. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Goldman Sachs.

34. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 6.50% to 9.00%, (ii) multiples ranging from 12.0x to 15.0x, and (iii) perpetuity growth rates ranging from 0.5% to 3.9%; (2) all line items underlying the unlevered free cash flow for FLIR for the years 2021 to 2025; (3) the range of illustrative terminal values for FLIR; (4) the net debt of FLIR as of December 31, 2020; and (4) the number of fully diluted outstanding FLIR common stock.

35. The Registration Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*" for FLIR: (1) the individual inputs and assumptions underlying the (i) multiples ranging from 16.0x to 20.0x, and (ii) illustrative discount rate of 8.25%; and (2) the cumulative dividends per share expected to be paid to FLIR stockholders in each of the years 2021 to 2024.

36. With respect to Goldman Sachs' "*Selected Transactions Analysis*," the Registration Statement fails to disclose the objective criteria, if any, that Goldman Sachs relied upon in selecting the transactions, as well as the overall transaction values and premiums paid therein.

37. With respect to Goldman Sachs' "*Premia Analysis*," the Registration Statement

8

fails to disclose each transaction and the premiums paid therein.

38. With respect to Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*" of the combined company, the Registration Statement fails to disclose the individual inputs and assumptions underlying the (i) multiples ranging from 28.0x to 34.0x, and (ii) illustrative discount rate of 8.25%.

39. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to FLIR shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, FLIR shareholders are unable to fully understand Goldman Sachs' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

40. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

41. Th Registration Statement provides that, during the sales process, Defendant Smith, who serves on the FLIR Board and Teledyne's board, "unwittingly" shared an email with Robert Mehrabian, the Executive Chairman of the Board of Teledyne, stating in pertinent part:

> On December 17, 2020, Mr. Smith forwarded to Dr. Mehrabian an email that had attached to it a recent article on opportunities for FLIR sensors in the autonomous vehicle market in the event that Dr. Mehrabian had not seen the article. In doing so, Mr. Smith unwittingly also shared an email exchange among the FLIR Board members, which included commentary from Mr. Cannon on the U.S. Air Force program of record opportunity he believed FLIR would not win, and also noted

9

that, as previously announced, FLIR had won the much larger U.S. Army version of such program.

42. The Registration Statement, however, fails to disclose: (1) the steps Defendant Smith and the Board took after discovering Defendant Smith "unwittingly" revealed such information to Dr. Mehrabian; and (2) whether and how Defendant Smith's email affected the sales process and the terms of the Proposed Transaction.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**4. Material Omissions Concerning Goldman Sachs' Potential Conflicts of Interest**

44. The Registration Statement omits material information concerning potential conflicts of interest involving Goldman Sachs.

45. While the Registration Statement discloses that "the Investment Banking Division of Goldman Sachs has not been engaged by FLIR, Teledyne or their respective affiliates to provide financial advisory or underwriting services for which Goldman Sachs has recognized compensation" during the "two year period ended December 20, 2020," the Registration Statement fails to disclose any services and fees provided by Goldman Sachs to those parties during the two-year period leading up to the issuance of its January 4, 2021 fairness opinion. *See* 17 CFR § 229.1015(b)(4).

46. Disclosure of a financial advisor's compensation and potential conflicts of interest is necessary due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

47. The omission of the above-referenced information renders the Registration

Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to FLIR shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

50. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

51. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

52. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements and omissions in the Registration

Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited

access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

  B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

  C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

  D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

  E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 23, 2021        Respectfully submitted,

                **HALPER SADEH LLP**

                By: /s/ Daniel Sadeh
                Daniel Sadeh, Esq.
                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                667 Madison Avenue, 5th Floor
                New York, NY 10065
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: sadeh@halpersadeh.com
                    zhalper@halpersadeh.com

                *Counsel for Plaintiff*